**No. 64233.**—National Carloading Corp. and James S. Baker Import Co. *v.* United States, protest 58/10187 (Los Angeles).

RAO, Judge: Certain imported merchandise, invoiced as "Crowbars," was assessed with duty at the rate of 21 per centum ad valorem, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for articles or wares, not specially provided for, composed wholly or in chief value of iron or steel.

It is claimed in this action that said merchandise is *eo nomine* provided for in paragraph 326 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as crowbars, which are dutiable at the rate of 11/16 cent per pound.

The language of the respective provisions, insofar as here pertinent, reads as follows:

Paragraph 397 and T.D. 54108, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

      *            *            *            *            *            *            *

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

        *            *            *            *            *            *            *

      Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *) _____ 21% ad val.

Paragraph 326 and T.D. 52739, *supra*:

Blacksmiths' hammers, tongs, and sledges, track tools, wedges, and crowbars, of iron or steel_____ 11/16¢ per lb.

Two samples of the imported articles are in evidence as plaintiffs' exhibits 1 and 2. These samples differ only with respect to length, exhibit 1 being 14 inches, exhibit 2, 12 inches. Counsel for defendant, in briefing the issues involved in the case, has provided the court with the following detailed description of the subject merchandise, which, it is believed, accurately embodies its salient features:

*Exhibit 1* (R. 3) is the involved imported article which, in length, is 14 inches; its oval shaped head section which extends at right angles from the main body of the bar tapers to two sharply reduced bifurcated points or prongs, thus forming a claw; the back of the head section has a polished flattened section for hammering purposes; as the body of the article extends downward to its other end it tapers off in width and ends with another like claw, which is smaller in dimensions than the head one.

Ole Engelseth, plaintiffs' sole witness, testified herein that, for the past 4 years, he has been employed by James S. Baker Import Co., as manager of operations, in which capacity he has handled the sale of its hardware products, including plaintiffs' exhibit 1, to wholesalers and jobbers. He stated that the item in issue is used, basically, to open wooden crates, and that it is bought and sold under a variety of names, but most commonly as a crowbar.

When asked whether he agreed with the definition of the word "crowbar" appearing in Webster's New International Dictionary, unabridged edition, 1934, he stated that he did, and that, in his opinion, plaintiffs' exhibit 1 conforms to that definition, which reads as follows:

A bar of iron or steel, usually wedge-shaped at the point or working end and more or less bent, used as a pry or lever, etc.

This witness admitted, however, that plaintiffs' exhibit 1 did not resemble the illustration of a crowbar contained in the same dictionary under the definition of the word "bar."

Engelseth further testified as follows, in response to questioning by the court:

JUDGE WILSON: Is it not a fact a crowbar is usually a large bar used for heavy work outside for quarrying, and work of that sort?

THE WITNESS: They come in all sizes from the smallest one to the largest one.

JUDGE WILSON: Isn't the name "crowbar" ordinarily applied to a heavier bar used for much heavier work?

THE WITNESS: They have applied also to the smaller sizes.

JUDGE WILSON: This is more of a nail puller, is it not?

THE WITNESS: Well, it's used just as much to open the cases as pull the nails.

Defendant's witness, Charles Casey, was manager of the tools and abrasive department of Ducommun Metals & Supply Co., distributor of metals, tools, and heavy hardware. During the 16 years he had been with the company, he had supervised the purchase of tools, including crowbars. This witness stated that crowbars come in two point styles, but all fall under one general classification. He identified as illustrative of standard crowbars, two photographs on a page of his company's catalog, with accompanying description, marked defendant's exhibit A; a 6-pound, 36-inch crowbar, marked defendant's exhibit B; and two representations of, respectively, pinch-point and wedge-point crowbars, from a page of the catalog distributed by the Warwood Tool Co., defendant's exhibit C. According to this witness, standard dimensions for crowbars in the industry

include lengths from 36 to 66 inches, and diameters from seven-eighths of 1 inch to 1½ inches, except that one company manufactures a crowbar which is only 24 inches long.

Casey stated, further, that crowbars are used as levers for moving heavy objects, such as railroad ties and machinery, never as hammers. Although he had never used an article like plaintiffs' exhibit 2, he had used a similar tool, called a box opener or a ripping tool.

On cross-examination, Casey testified that his company sells crowbars to railroads and industrial accounts on the west coast of the United States. He expressed general agreement with the definition of "crowbar," hereinabove quoted, except for the statement that a crowbar is bent at the end. He further stated that he would not call plaintiffs' exhibit 2 a crowbar, for the reason that it has none of the characteristics thereof. Specifically, he said, it is too short; it is bent; it has two claws and a hammering surface.

The witness distinguished a crowbar from a carpenter bar, in that the latter has a curved neck, with a claw and a wedge set at a slight angle at the end; and stated that a wrecking bar is practically the same as a carpenter bar, with less of a curvature; and that a ripping bar is also similar. In fact, he agreed that some of the bars are so similar in shape that they probably could be called crowbars.

It is obvious from the foregoing analysis of the evidence in this case that neither party relies upon the rule of commercial designation for the construction of the *eo nomine* provision for "crowbars" in paragraph 326, as modified, *supra*. Consequently, and under well-settled principles of customs law, the term must be interpreted in accordance with its common meaning. The common meaning of a tariff provision is a question of law to be determined by the court. *United States* v. *Florea & Co., Inc.*, 25 C.C.P.A. (Customs) 292, T.D. 49396; *United States* v. *O. Brager-Larsen*, 36 C.C.P.A. (Customs) 1, C.A.D. 388. In giving voice to it, it is our privilege to refresh our recollections by resort to relevant lexicographical and other standard authorities. *United States* v. *John B. Stetson Co.*, 21 C.C.P.A. (Customs) 3, T.D. 46319. Testimony of witnesses experienced in the handling of the product may also be considered, but such testimony is advisory only and not binding upon the court. *Stephen Rug Mills* v. *United States*, 32 C.C.P.A. (Customs) 110, C.A.D. 293; *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 24, C.A.D. 209.

In support of the contention that the tools at bar are crowbars within the common meaning of that term, counsel for plaintiffs invite our attention to the following definitions, in addition to that contained in the 1934 edition of Webster's New International Dictionary, *supra*:

Funk & Wagnalls New Standard Dictionary of the English Language, 1959:

**crowbar,** 1. *n.* A heavy iron or steel bar, alway flattened or squared and sometimes bent at one end, often furnished with a claw at one end and a point at the other; used primarily as a lever.

**pinchbar,** *n.* A kind of crowbar with a short projection and a heel or fulcrum at the end; used to pry forward heavy objects.

The Century Dictionary, An Encyclopedic Lexicon of the English Language:

[1900] **crowbar,** *n.* A bar of iron with a wedge-shaped end, sometimes slightly bent and forked, used as a lever or pry. Also called simply *crow.*

[1913] **crowbar,** *n.* A bar of iron with a wedge-shaped end, sometimes slightly bent and forked, used as a lever or pry. Also called simply *crow.*

It is urged by plaintiffs that the instant tool falls within the above definitions since "(1) it is a bar, (2) it is bent, (3) it is wedge-shaped on one end, and

(4) it is used as a lever or pry when opening a box or when pulling out a nail," and that size and weight are not defined characteristics of crowbars.

Counsel for defendant argues that the subject articles are essentially "small combination nail pullers and pry bars supplemented with a hammering surface," and, hence, are manifestly more than crowbars, citing *Krueger & Hoch* v. *United States*, 2 Cust. Ct. 68, C.D. 88; *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C.D. 1122; *J. W..Hampton, Jr., & Co.* v. *United States*, 24 Treas. Dec. 218, T.D. 33191; *M. W. Zack Metal Company* v. *United States*, 26 Cust. Ct. 91, C.D. 1306; and *The Kroder Reubel Co., Inc., and Alltransport, Inc.* v. *United States*, 42 Cust. Ct. 149, C.D. 2079.

An examination of the official samples, the evidentiary value of which has long been recognized (*United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T.D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, T.D. 44029; *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995), in the light of the dictionary definitions of the term, convinces us that the subject articles are, indeed, crowbars. We find, in the cited definitions, two attributes in particular which are common to all crowbars. These are that a crowbar is a bar of iron or steel and that it is used primarily as a lever or pry. It is not disputed that the instant tool is a bar of iron or steel, and that it is used primarily to pry open packing cases and the like. Since other characteristics of a crowbar may vary, and it may be "more or less" bent, wedge-shaped, claw-shaped, or pointed, and weight and size are not material factors, we do not consider as detracting from this conclusion that one end of the subject article is bent at right angles to the bar, or that both ends are wedge-shaped and clawed, or that it is less than 24 inches in length, or that it is relatively light in weight. In respects which are essential to its fitting the description of a crowbar, it is not found wanting.

We have carefully considered the cases cited by defendant in support of the proposition that the instant articles are more than crowbars, but find them to be without controlling significance here. In each of said cases, the merchandise possessed a combination of features essential to its ultimate function or use which clearly demonstrated its multiple character. Hence, combination nail-screws were held to be more or other than nails in the *Krueger & Hoch* case; machines for weaving and knitting were held to be more than looms, in *Clutsom Machines, Inc.*; machines for printing tickets and recording the sale thereof were more than printing machines, in *J. W. Hampton, Jr., & Co., supra*; zinc alloyed with small quantities of aluminum, copper, and magnesium was considered to be more than zinc in slabs, in *M. W. Zack Metal Company* v. *United States, supra*; and brass tubes lined with iron tubes were found to be other than brass tubes in the *Kroder Ruebel Co.* case. Little further need be said concerning these products than that in their imported condition they did not respond to the definition of the articles they were claimed to be.

Accordingly, there is merit in the claim of plaintiffs that the subject merchandise is properly dutiable at the rate $11\frac{1}{16}$ cent per pound within the provision of paragraph 326, as modified, *supra*, for crowbars, and that claim in the instant protest is, therefore, sustained.

Judgment will be entered in accordance with this decision.